1809.

Hammond
vs
Sappington

THE COURT, at this term, disagreed with the court below in the opinion expressed in the *first* bill of exceptions, but concurred with them in that expressed in the *second* bill of exceptions.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

---

JUNE.

## HAMMOND vs SAPPINGTON.

N B for valuable consideration, connected with, and conveyed to J S, by metes and bounds, 800 acres, part of a tract of land "situate, lying and being, in thestate of Kentucky, in the county of Bourbon, and on the main branch of Licking" A grant of the land described it as "lying and being in the county of Bourbon, on the main branch of Licking, in he tate of Virginia." After the grantor he land, a new tate, by the name of Kentucky, was brmed from Virginia, and the ounty of Bourbon ecame a part of entucky, which ounty was afterwards divided, and two new counties erected, called rtke and Mason anties, and the id now lies in ne two counties. J S filed his in chancery to le the contract at d, and the cideration mo repaid to him, & Decreed, that bill be dismissed.

APPEAL from the Court of Chancery. The bill of the complainant, (now appellee,) filed on the 3d of September 1802, stated, that in the year 1796 he purchased of the defendant, (now appellant,) a *mill-seat*, in *Anne-Arundel* county, at and for £160 money paid down at the time, and obtained possession; and not doubting but that a clear title could be given to him by the defendant, he improved the property, and expended in improvements £120. That finding afterwards that the defendant had no right to the land, he applied to him to repay the money expended, and to refund that which he had received; which the defendant refused to do; but again practising another deception and imposition, he agreed to sell and convey to the complainant, in consideration of the premises, and the money paid and expended for and on the *mill-seat*, 800 acres of land situate in *Bourbon* county, in the state of *Kentucky*, and accordingly executed a deed therefor, dated the 10th of February 1796, in which the land is described "as all that part of a tract or parcel of land, contained within the metes and bounds of a tract of land, containing in the whole 6134 acres, beginning for the said part at the beginning trees of the whole tract, and running" &c. describing the part by metes and bounds, "situate, lying and being, in the state of *Kentucky*, in the county of *Bourbon*, and on the main branch of *Licking*, containing 800 acres," &c. That the complainant made preparation, and did remove to the state of *Kentucky*, and went in search of the land in *Bourbon* county, and according to the description contained in the deed, but to his great surprise no such land was there to be found, to which the complainant had any kind of claim or title; that he caused the records to be examined, and the result was, that the complainant owned no land in that

county. That he called on the defendant, and informed him of the premises, and requested him to refund the sum of £280, the consideration of the purchase of the land, and to make him compensation for the loss of time, &c. but the defendant refused to do either. *Prayer*, that the money be decreed to be repaid, and for further relief, &c. The *answer* of the defendant denied that he had no title to the *mill-seat*. That at the instance and request of the complainant, he consented to give him his right in 800 acres of land in *Kentucky*, for the *mill-seat* and improvements, the complainant alleging that the lands the defendant was to give him his right in, were good in quality, and that *J. D.* his brother-in-law then in *Kentucky* knew the lands, and had informed him of their quality. The defendant showed his title in the lands to the complainant, being patented to *Richard Ridgely*, esquire, on the 23d of November 1790, and conveyed to the defendant by deed dated the 2d of November 1793, and duly recorded, &c. That the patent for the land was granted before the adoption of *Kentucky* as a state in the union; and when the warrants were granted for the land, for which the patent issued. the land lay in *Virginia*, and in *Bourbon* county. That since that time *Kentucky* has become a state, and the county of *Bourbon* has been divided, and two new counties have been erected, called *Clarke* and *Mason* counties, and that the land lays in those counties. He denies all fraud, &c. The *grant* for the land, as exhibited, is dated the 3d of November 1790, and was issued by the governor of the state of *Virginia* to *Richard Ridgely*, and the land is therein described to be a tract or parcel of land containing 6134, acres, lying and being in the county of *Bourbon*, on the main branch of *Licking*, &c. *Commissions* issued and testimony was taken thereunder.

Hanson, Chancellor, (June term 1805.) It is evident that the defendant was satisfied the first contract made with the complainant ought by him, as an honest man, to be rescinded; and that the complainant had sustained a grievous disappointment. This is an important consideration in the cause. Well then, to do justice to the complainant, it was incumbent on the defendant to refund the purchase money, and price of the improvements, with interest. But instead of doing this, he proposes to convey a

large tract of land in *Bourbon* county, in *Kentucky.* The complainant accepts the offer, but is again disappointed. It is clear that the defendant's land, if any he has *at* the place or *near* the place, &c. does not agree with the description. *It is not in Bourbon county.* Says the counsel there are two descriptions, and if *one* is answered, it is sufficient. This is indeed the rule in some cases. It is a rule in favour of grantees. But in *a* case like the present, that is to say, with respect to bargainees, the rule is reversed. What! If a man agrees to procure me a horse 17 hands high, and of a bright bay colour, will it be sufficient for him to bring me a horse of a bright bay colour only 15 hands high? It is at my option whether I will take the horse or not.

The contract appears to be for 800 acres of land in *Bourbon county,* on *the main branch* of *Licking.* Suppose then the defendant to have land on *Licking* but not in *Bourbon* county, is it conceivable that he complies with his contract by conveying this land? Ah! but *Bourbon* county once contained that land, but on a division of the county, the land constitutes part of *Mason* county. It is in vain to argue this way. Is it necessary to mention the first rules of equity with respect to contracts forbidding all trick, finesse or deception, or even misunderstanding? In short, it appears to the chancellor, that the complainant was in a manner, or might well suppose himself to be, under the necessity of making a contract for land, which, independently of the contract for the *mill-seat,* he would neither have offered to purchase, nor have purchased, if offered; that neither of the parties were acquainted with the thing contracted for, and that the complainant has twice been deceived. In saying this the chancellor means no imputation on the defendant, who certainly acted honourably with respect to the first contract, and who probably has withstood the claim of the complainant, because he has himself been disappointed, &c. To sustain the fair character he has enjoyed during a long life, he can do no better than perform the following decree, without delay—*Decreed,* that the contract between the complainant and defendant for the sale and purchase of 800 acres of land in the state of *Kentucky,* as stated in the bill and answer, be vacated and annulled, and that the deed to the complainant from the defendant, executed in consequence thereof, dat-

1809

Hammond
vs
Sappington

ed the 10th of February 1796, and filed in this cause, be vacated and annulled, so far as the power of this court extends, and that the complainant, on the defendant's demand, shall reconvey the said land to the defendant, in the same manner as the defendant conveyed to him. But this may not be done until the defendant shall bring in or pay the money as herein after directed. That the defendant bring into this court, to be paid, or that he pay, to the complainant, the sum of £280. with interest from the 10th of February 1796; or that on the 10th of February next, he bring into this court to be paid, or that he pay, to the complainant, the sum of £438 8 6, that being the amount of the money paid by the complainant to the defendant, and of the improvements by him made on the *mill-seat*, &c. with interest, &c. That the sum last mentioned, if not paid on the last mentioned day, or if the principal and interest be not before discharged, shall carry interest from the last mentioned day. But costs are not to be allowed the complainant. From which decree the defendant appealed to this court.

The cause was argued before Polk, Buchanan, Nicholson, and Earle, J.

*Shaaff*, for the Appellant. The land was sold as lying in *Bourbon* county, in the state of *Kentucky*, and is described by *metes and bounds*. The fact is, that the land, at the time it was granted, was situate in *Bourbon* county in the state of *Virginia*. At the time it was sold a new state had been erected by the name of *Kentucky*, and from the county of *Bourbon* two counties had been taken, called *Clarke* and *Mason* counties. The defendant's answer alone supplies the proof required by the bill. That taken under the commissions does not make out the plaintiff's case. When speaking of land laying upon the waters of any great river, it does not mean necessarily that the water flowed by the land. The meaning is, that it was at no great distance, or it was the next contiguous water to it. The decree of the chancellor vacates a deed for land in the state of *Kentucky*. This he had no authority to do. The decree is also incorrect in another particular—it should have been, that upon a reconveyance of the land by the complainant to the defendant, then the latter should pay, &c. But the chancellor has annulled the deed, which he

could not do, and if the money is paid, the defendant loses both the money and the land. But independently of this objection, the facts stated in the bill have not been proved by the testimony taken in the case. There has been no evidence whether the land lay in *Kentucky* or not. Nor is there any evidence that the complainant called upon, or gave notice to the defendant that the land was not in *Kentucky*. But after laying by six years, he now wishes for the money to be refunded, He may have sold the land, or it may have been sold for the taxes due thereon. A stale, forgotten claim, is discountenanced by the court of chancery. The point of time, when a claim is considered as stale, is affixed to the nature of the transaction. Here the land, in a remote state, was abandoned for six years, and most likely it has been sold to pay taxes. There is no evidence that the land does not lie as stated in the deed. As to where it does lie, is susceptible of better proof than that produced. The only proof is in the defendant's answer, and that must be taken as proof, and being so, there is an end of the case. The land exists according to its *natural description*, as described in the deed; and admitting the whole allegation of the bill of complaint, the contract was a valid one. It is not denied but that the defendant had a right to the land; but it is alleged that it does not lie in *Bourbon* county. This may be assimilated to a story told of an old lady in *South Carolina*, who always supposed she resided in a particular county, but upon running the county lines it was discovered that her residence was in a different county, at which circumstance she was greatly concerned, for she observed that she had always heard that the county in which her residence was held to be, was a very *unhealthy county*. The chancellor, by his decree, has said, that there is a difference between grantees and bargainees. It is difficult to ascertain the distinction. A deed may be vacated on the ground of fraud, &c. but a mistake in a contract does not vacate it. Relief may be had without its being vacated. If A sells 100 acres of land, and it holds out to contain only 50 acres, would the court of chancery vacate the contract? Surely not; but it would give damages for the deficiency of land. Here there was no fraud alleged. It may be considered as a mistake as to the name of the county in which the land lay; and if the land was of less value in one coun-

1809

Hammond
vs
Sappington

ty than in another, could not relief be given without vacating the contract? There is no dispute as to the quality or quantity of land. If the complainant had produced proof that the land being considered as lying in *Bourbon* county, was the only inducement to the purchase, then it would lay a foundation for vacating the contract; but nothing of the kind is alleged, or appears in proof. The land is described as laying on the waters of *Licking;* and the proof is, that it does lie there. As to the land's lying in this or that county was no inducement to the purchaser, but if it was not in value equal to that intended to be sold, the chancellor ought to have compensated in damages, and not vacated the contract. Before the complainant asked for equity, he ought to have done equity. He should have reconveyed the land to the defendant, according to the laws of *Kentucky.* But he claims both the land and money, and the chancellor has so decreed as to give him both land and money. There is some evidence taken as to the value of the land near to the court-house, and land high upon *Licking.* Better proof than that which was taken could have been had by sending a commission to the very place.

*Johnson,* (Attorney-General,) for the Appellee. The grant for the land describes it as lying on and crossing *Licking,* in *Bourbon* county, in the state of *Virginia,* and it is dated the 23d of November 1790. The survey was before the division of the state, and the grant was after the division. The act erecting *Mason* county was on the 5th of November 1788, and the act erecting *Clarke* county was on the 9th of December 1792. The land when it was granted could not lie in the county of *Bourbon* from the description given of it in the grant, and that given of the county. Suppose A buys land lying on the *Potomac* in *Frederick* county, and it turns out that it lies in *Allegany* county on the *Potomac,* would he be bound by his contract and be compelled to take the land? Suppose indeed it lay in *Saint-Mary's* on the *Potomac,* would it be considered as an immaterial circumstance provided it lay upon the *Potomac,* a long extended river? *Licking,* or any other river, is not so good a description as a county. When this contract was made the defendant had no land on *Licking,* in the county of *Bourbon.* The land was represented to be 19 miles from *Bourbon* court-house, and — miles from

1809

Hammond
vs
Sappington

*Lexington.* The evidence of *Sewell* is, that the defend-
ant said that the complainant "will not find a *Johnny
Snowden* in me," meaning, that if he does not find the
land, he would not recover of him as he had of *Snowden.*
There is proof that the defendant refunded to *Aldridge,*
who had purchased part of the same tract. Where there
is a trivial circumstance, the chancellor does not annul the
contract, but where there is a material one which goes to
the essence, then the contract is annulled. The defendant
is bound to show that the circumstance is not material.
There is no proof at all on the part of the defendant. He
ought to have showed that his deed passed the legal estate,
according to the laws of the country, before he complains
of the deed's being annulled. This court can give that
decree which the chancellor ought to have given, if his is
erroneous. How could the complainant prove that the land
was not there? It was proving a negative. The defendant
should have proved that it was there. But it has been said
that the deed answers the natural description of the land.
It was more material that the land should lie in *Bourbon*
county, than on *Licking,* a river of perhaps 100 miles in
length. On the part of the complainant it is contended,
that both descriptions should be complied with, so as to
bind him to the contract. It has been said, that under the
decree the defendant loses his land and money. But sup-
pose the decree is reversed, and it turns out that the land
is swallowed up by elder surveys, then the complainant
loses the land and the money.

*Shaaff,* in reply. The *onus probandi* is on the com-
plainant; he avers a fact which, if denied, he is compelled
to prove before he can succeed. The attorney-general
has said, that one description failing, the defendant is
bound to show it is not a material one, which goes to the
essence of the contract. This is not so. If the complai-
nant has sustained damage, he must prove it. The proof
is not made out on the part of the complainant, and he is
obliged to resort to the defendant's answer, and if he
does, the answer must be taken all together. The law of
*Virginia* has been resorted to for the purpose of show-
ing that the land does not lie in *Bourbon* county. It is
not possible to say by that law whether or not the land
lies in that county. It is not denied, that if there is an

immaterial circumstance which affects the contract, that redress ought to be had in damages. As to when *Kentucky* was admitted into the union, See 1 *Vol. Laws of U. S.* 894. The land having been once in *Bourbon* county, is sufficient. *Dorsey's Lessee vs. Hammond,* 1 *Harr. & Johns.* 193. Suppose a deed for a house in *Hager's-town,* in *Frederick* county, would it be a good deed? The house in *Hager's*-town must have been the essence of the contract. As to *Sewell's* testimony that the defendant said the complainant would not find a *Johnny Snowden* in him, the meaning is, that as the complainant had alleged that *Snowden* had cheated him, (which was not true,) the complainant would not be cheated by him, as the land was to be found.

*Ridgely,* also in reply. The decree of the chancellor is erroneous on two grounds—1. The court of chancery had not jurisdiction, and the decree cannot be enforced. 2. If the court of chancery had jurisdiction for compelling a specific performance of the contract, yet there is no proof in the case that there was fraud, mistake, &c. upon which to give relief.

*First position.* A subsequent division of the state, and forming a new one, and the laying off new counties, did not alter the contract, as the land could not be affected by any such proceeding. The decree cannot be enforced in this court. The remedy is to be against the person, and not against the thing. Suppose the appellant complies with the decree, by paying the money, what process can he have to compel the appellee to comply? Suppose the appellee had paid the appellant the money, and the latter had refused to convey the land, could the court of chancery compel a specific performance of the contract? The court had no power to compel a deed. It might decree the money to be refunded. If the chancellor had decreed a deed, could the decree operate in *Kentucky?* It certainly could not. It is evident that the chancellor had no jurisdiction to enable him to make this decree; there being no mutuality as it affected the parties. He doubted his own power, for he says "so far as the power of this court extends." This shows that he did not think he had jurisdiction to vacate a deed for land in another state. The appellee was guilty of *laches,* and is therefore not to be benefitted by it. He

1809.

Hammond
vs
Seppington

1809.

Negro George
vs
Dennis

may have conveyed the land away, or it may have been sold to pay the taxes on it.

*Second position.* Admitting the court had competent jurisdiction to give the relief prayed, yet there is not sufficient evidence upon which the relief could be grounded. The answer denies the material facts relied on by the bill. The reason for rescinding the first contract was not for the cause stated by the chancellor. It was fully proved, that no dam could be made so as to prevent the water from overflowing on the neighbouring lands. The first contract was fair and honest; and the rescinding it was perfectly agreeable to both parties, and was done at the instance of the appellee, who instead of wishing the money to be refunded, was desirous to take *Kentucky* land. There is no proof that the appellee, when he went to *Kentucky,* made the necessary inquiry as to where the land lay. If the land lay in this state, it was not such a contract as ought to be annulled upon the mere ground of its not lying in the county, if it conformed to the other descriptions.

DECREE REVERSED.

Dec. (E. S.)

On the death of S D, a resident of this state, a slave belonging to his estate, was, by a bill of sale executed by his administrator in 1792, sold to G D, also a resident of this state, but who immediately afterwards removed to *Virginia,* and took the slave with him. On a petition fil'd by the slave against G D for his freedom—*Held,* that he was not entitled to freedom.

NEGRO GEORGE VS. DENNIS,

APPEAL from *Somerset* county court. This was a petition for freedom. The facts of the case, as admitted at the trial, were these—The petitioner, (the appellant,) was the property of *Samuel Engersole,* who resided in *Somerset* county, and on his death, came to the possession of *Richard Engersole,* his administrator, who resided in the same county. *R. Engersole,* the administrator, by bill of sale dated the 16th of October 1792, sold the petitioner to the defendant, then a resident also of the said county, and who immediately afterwards removed to the state of *Virginia,* and took the petitioner with him. The court, (*Polk,* Ch. J. and *Done,* A. J.) were of opinion, and so instructed the jury, that these facts were not sufficient to entitle the petitioner to his freedom. The petitioner excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, NICHOLSON, GANTT, and EARLE, J. by

*W. B. Martin,* for the Appellant; and by *J. Bayly,* for the Appellee.

JUDGMENT AFFIRMED.